UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MALIBU MEDIA<br><br>v.<br><br>JOHN DOE (IP 71.179.224.159) | No. 1:14-cv-01235-CCB |

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT, OR, IN THE ALTERNATIVE, MOTION TO QUASH OR STAY THE SUBPOENA

John Doe ("Defendant" or "Doe"), through undersigned counsel, hereby responds to Malibu Media, LLC ("Plaintiff" or "Malibu"). Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant hereby moves to dismiss the Complaint because the pleading is legally insufficient to proceed. In the alternative, Defendant seeks a more definite statement pursuant to Fed. R. Civ. P. 12(e). In the alternative, Doe Defendant moves to quash or stay the subpoena issued to his internet service provider.

### I. PROCEDURAL BACKGROUND

Plaintiff filed its Complaint on April 13, 2014 alleging violations of its purported copyrights. After filing its Complaint, Plaintiff sought leave to conduct discovery. In pursuit of identifying information for such Defendants, Plaintiff issued a subpoena to Defendant's ISP, Verizon. In issuing the subpoenas, Plaintiff primarily relies upon Internet Protocol (IP) address 71.179.224.159 to identify Doe Defendant. Prior to disclosing Defendant's identifying details, Verizon provided Defendant with notice of the Plaintiff's subpoena. Doe Defendant retained undersigned counsel and this Motion follows.

1

## II. FACTUAL BACKGROUND

Plaintiff Malibu Media is a producer of pornographic content. Plaintiff is represented by Lipscomb, Eisenberg & Baker, in Miami, Florida, assisted by local counsel. Plaintiff routinely sues numerous defendants in copyright infringement actions, relying on a sophisticated business model that consists of producing low-cost, low-quality works that barely qualify for copyright infringement. On information and belief, Malibu Media makes its "works" freely available via a torrent protocol, where they are sure to be accessed and "shared" by other users. Once this seed is planted, Plaintiff and its counsel retain the services of IPP Limited, its "investigator" to log IP addresses purportedly accessing its works. See Complaint at ¶ 18. Upon acquiring a critical mass of data, Plaintiff files suit against individual "John Doe" defendants, immediately seeking subpoena power to identify the account holders. The present matter is consistent with this background.

## III. THE COMPLAINT IS PROPERLY DISMISSED

### A. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted when a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." <u>Ashcroft v. Iqbal</u>, 565 U.S. 662, 679 (2009) (internal quotation marks omitted). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. <u>Id.</u>

**B. Dismissal is Appropriate for Plaintiff's Failure to State a Claim**

A careful review of Plaintiff's Complaint demonstrates that the necessary pleading standards have not been met.

In the "Introduction" portion of the Complaint, Plaintiff cites a federal statute, summarily identifies Defendant as an "infringer," without context, and sets forth copyrights purportedly owned by Plaintiff. <u>See</u> Complaint at ¶ 1-3. The Complaint next discusses jurisdiction and venue matters, which do not address the facts of the alleged infringements. <u>Id.</u> at ¶ 4-7. Under the "Parties" heading, Plaintiff outright admits that it does not know Defendant, does not know if Defendant is a man or a woman, or that it has any other evidence that the owner of the IP address is the copyright infringer. <u>Id.</u> at ¶ 8-10. Next, in Paragraphs 11-17, the Complaint describes the BitTorrent file distribution network, which answers no question as to how the purported Defendant allegedly infringed Plaintiff's works. <u>Id.</u> at ¶ 11-17. Next, in Paragraphs 18-28, Plaintiff describes the method via which IPP Limited apparently interacted with the IP address at issue. <u>Id.</u> at ¶ 18-28. Under the heading "Miscellaneous" Plaintiff again discusses issues unrelated to the claims. <u>Id.</u> at ¶ 29-30. Finally, in Paragraphs 31-36, Plaintiff sets out the specific direct copyright infringement claim, but such allegations are largely citation to statutory law. <u>Id.</u> at ¶ 31-36. The rest of the Complaint consists of requests for relief and a demand for a jury trial. <u>Id.</u> at 6-7.

1. An IP Address is Not a Copyright Infringer

Plaintiff's allegations fail to state a claim for relief that crosses the line between "possible" and "plausible." The Complaint, read as a whole, suggests that Plaintiff has no idea who purportedly downloaded the works using a particular IP address. Indeed, Plaintiff suggests that "Defendant's Internet Service Provider can identify the Defendant." Id. at ¶ 10.

While it is *possible* that an Internet Service Provider subscriber engaged in the allegedly infringing conduct, it is hardly *probable*, as the law requires. See generally Iqbal, 565 U.S. at 679. In the present matter, the only fact supporting the allegation of copyright infringement is that the IP address at issue was assigned to a specific Internet user at the time of the alleged infringements. While it is possible that the subscriber is the guilty party, it is more probable that the infringements, if any, were undertaken by any number of parties that may or may not have been associated with the ISP subscriber. For example, the purported infringer may have been a houseguest, a family member, a person on the street, a neighbor, or an illicit user of Defendant's Internet connection. Stated differently, Plaintiff ignores the fact that IP subscribers are not necessarily copyright infringers.

Numerous courts have dismissed cases similar to the present matter for Plaintiff's failure to resolve this identification issue. See e.g. VPR Internationale v. Does 1-1017, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. Apr. 29, 2011); Elf-Man, LLC v. Cariveau, 2014 U.S. Dist. LEXIS 6453 (W.D. Wash. Jan. 17, 2014) (granting Motion to Dismiss for Failure to State a Claim). The VPR Internationale court explained that while "an IP address might actually identify an individual subscriber and address the correlation is still far from perfect . . . The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." VPR Internationale, 2011 U.S. Dist. LEXIS

64656. Similarly, other decisions have reasoned that "the only fact offered in support of this allegation is that each named defendant pays for internet access, which was used to download and/or distribute the movie." Elf-Man, LLC, 2014 U.S. Dist. LEXIS 6453 at 7. The Court goes on to explain that "simply identifying the account holder associated with an IP address tells us very little about who actually downloaded [digital content] using that IP address." Id.

In the present matter, the Plaintiff has not alleged that the John Doe in question:

"has the BitTorrent 'client' application on her computer, that the download or distribution is in some way linked to the individual subscriber (as opposed to her account), that the defendant has acknowledged personal involvement in the download and distribution, or even circumstances which might increase the likelihood that the subscriber is the infringer (such as defendant's living arrangements or network details). Rather than provide specific facts tying the named defendant to the infringing conduct, plaintiff merely alleges that her IP address 'was observed infringing Plaintiff's motion picture' and guesses how that might have come about."

Elf-Man, LLC, 2014 U.S. Dist. LEXIS 645 at 7-8 (footnote omitted). The facts in the present matter are nearly identical. Other than an IP address, which may or may not have anything to do with the alleged infringement, the Plaintiff provides absolutely no support for the fact that the Doe Defendant had anything to do with the purported infringement.

Plaintiff's complaint contains only one claim, which is "Direct Infringement Against Defendant." See Complaint at 5. As set forth above, there are virtually zero factual allegations to support the suggestion that the internet subscriber named as Defendant is the actual infringer of any copywritten materials.

Even if the Plaintiff were to amend its Complaint with additional claims, such as claims for contributory copyright infringement or vicarious copyright infringement, the Complaint would still fail to meet necessary pleading standards. Numerous cases have explained that a defendant is only liable for infringement when he or she intentionally encourages or promotes the alleged copyright infringement. See Sony Corp of Am. v. Universal City Studios, Inc., 464

U.S. 417, (1984); <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 932

(2005) ("where evidence goes beyond a product's characteristics or the knowledge that it may be

put to infringing uses, and shows statements or actions directed to promoting infringement,"

intentional inducement of infringement may be shown and liability attach); <u>Perfect 10, Inc. v.</u>

<u>Amazon.com, Inc.</u>, 487 F.3d 701, 727 (9th Cir. 2007) ("actor may be contributorily liable for

intentionally encouraging direct infringement if the actor knowingly takes steps that are

substantially certain to result in such direct infringement").

Adding claims for contributory or indirect infringement would suffer from the same

defects as the direct infringement claim. Namely, Plaintiff can provide no facts that would

suggest that the subscriber holding the IP address encouraged or otherwise promoted the alleged

infringement. Indeed, it is much more probable that Doe Defendant would *not* support

infringement of copywritten works, given that subscriber's name, address and payment

information are directly connected to the account.

### C. The Complaint Relies on Data Derived from an Unethical Expert Arrangement

Recent filings in Maryland cases have called into question the arrangement between

Malibu Media and its "investigator" IPP. <u>See e.g.</u> <u>Malibu Media, LLC v. John Doe</u>

<u>(173.64.119.92)</u>, No. 14-cv-0223 (D. Md. 2014) at Docket 7-9.[1] The filings, by attorney Morgan

Pietz and his local counsel, provide substantial factual background[2] about the likely contingency

fee relationship between IPP and Malibu Media. While the filings contain substantial detail, the

---

[1] These matters are properly considered by the Court under Rule 12(b)(6) without converting the motion to one for summary judgment because the investigation and IPP's role are specifically set forth in Plaintiff's Complaint. <u>Chamberlain v. American Honda Finance Corp.</u>, 931 A.2d 1018, 1025 (D.C. 2007); <u>Washkoviak v. Student Loan Marketing Ass'n</u>, 900 A.2d 168, 178 (D.C. 2006); <u>Oparaugo v. Watts</u>, 884 A.2d 63, 76 n.10 (D.C. 2005).
[2] Defendant appreciates that there are questions of relevancy and admissibility in some of the cited materials. Regardless, the questions raised are substantial enough that Plaintiff would be well-served to include, in any amended complaint, or in a separate filing, an affidavit expressly denying that the alleged contingency fee relationship exists.

crux of the argument is that a contingency fee relationship between an expert and a plaintiff has

been found to be unethical as a matter of public policy. See generally Id. at Docket #8.

Of particular note in the cited filings, "[f]inancial arrangements that provide incentives

for the falsification and exaggeration of testimony threaten the very integrity of the judicial

process which depends upon the truthfulness of witnesses." Accrued Fin. Servs., Inc. v. Prime

Retail, Inc., 2000 WL 976800 at *3 n. 3, (D. Md. No. 1:99-cv-2573, ECF No. 20, 6/19/00)

(Motz, J.) aff'd by 298 F.3d 291, 300 (4th Cir. 2002) ("[w]e thus agree with the district court

that, whether under the label of maintenance, champerty or barratry, the Assignments in this case

violate Maryland's strong public policy against the stirring up litigation or promoting litigation

for the benefit of the promoter rather than for the benefit of the litigant or the public."); see

also Farmer v. Ramsay, 159 F. Supp. 2d 873, 883 (D. Md. 2001) (granting motion to strike

reports of expert retained under contingency fee arrangement and noting "[a]s Chief Judge Motz

of this Court observed, 'witness contingency fee agreements affirmatively violate the

fundamental policy of Maryland and the United States.'"), aff'd on other grounds, 43 Fed. Appx.

547, 551 (4th Cir. 2002); citing Accrued Fin. Servs., 2000 WL 976800 at *3 n. 3.

In the present matter, Defendant has substantial concerns about the potential for

unchecked profiteering by Plaintiff and IPP, and how the shared interests may have affected the

purported exhibits attached to the Complaint. See Complaint, Exhibits A-B. Were IPP to be paid

only upon financial success of Plaintiff's lawsuits, it would "provide incentives for the

falsification and exaggeration of testimony," and encourage the filing of lawsuits, that, like here,

fail to meet necessary pleading standards.

Given the substantial concern about the ethics of IPP's compensation, the Complaint is

appropriately dismissed, as occurred in the Accrued Fin. Servs., Inc. matter, unless the Plaintiff

can make a relatively simple showing that the expert arrangement is not violative of Maryland law.

### IV. IN THE ALTERNATIVE, A MORE DEFINITE STATEMENT IS REQUIRED

Fed. R. Civ. P. 12(e) authorizes a defendant to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."

Even assuming that an IP address would suitably identify a person that might be reasonably expected to have infringed the Plaintiff's purported works, the Plaintiff does not provide any factual context to allow Defendant to understand the allegations against him. For example, Plaintiff should reasonably provide allegations relating to the following factors:

- How much of the copywritten work was allegedly infringed.
- The specific portions of the copywritten work that were infringed.
- The software used by Defendant to facilitate any alleged infringements.
- Whether Defendant downloaded the copywritten works, including dates and times, as well as the source from which Defendant accessed the work.
- Whether Defendant uploaded the copywritten works, including dates and times of such infringements, and the recipients of the specific uploaded content.
- Whether Defendant had any knowledge of the alleged infringement via the Internet connection provided by her ISP, and how Defendant did or should have received notice of such infringement.
- Whether Defendant intentionally encouraged or promoted copyright infringement by a third party, including the identification of any third party.

Without knowing more about the specific claims, Defendant cannot reasonably be expected to adequately respond to the Complaint. Even where the court declines to dismiss the Complaint under Rule 12(b)(6), the Complaint almost certainly demands more definitive statements as to the specific allegations, consistent with the issues raised above.

### V. IN THE ALTERNATIVE, THE SUBPOENA SHOULD BE QUASHED OR STAYED

Even where Doe Defendant is not otherwise dismissed from this matter, the subpoena issued to his Internet Service Provider should be quashed.

Fed. R. Civ. P. 45(c)(3)(A)(iv) provides that no person shall be subject to a subpoena that imposes an "undue burden." Furthermore, the Federal Rules dictate that a court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. Fed. R. Civ. P. 26(c). In determining an "undue burden," a court generally examines "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Flatow v. Islamic Republic of Iran, 196 F.R.D. 203, 206 (D.D.C. 2000), vacated in part and affirmed in part on other grounds, 305 F.3d 1249 (D.C. Cir. 2002).

Plaintiff's request for subscriber information that may or may not lead to the alleged copyright infringer has already led to Defendant incurring attorney's fees and costs, regardless of whether the Defendant infringed the work. In addition, the request burdens a third party ISP with a request for information about an act that may or may not be actionable against Doe Defendant.

Moreover, the Plaintiff's Motion to Expedite Discovery, and the Court's subsequent order granting discovery, relies on the affidavit of Tobias Fieser, an employee of IPP. See Docket #4-4. As discussed above, the veracity of such an affidavit should be seriously questioned given the likely contingency fee relationship between Plaintiff and IPP. Any subpoena issued in reliance of the Fieser affidavit is especially likely to lead to oppressive discovery that may or may not be primarily motivated by IPP's bottom line.

Given the substantial ethical concerns, Defendant submits that the subpoena issued to his ISP should be quashed, or, at a minimum, stayed, until this Court has had opportunity to resolve the ethical questions before it.

## VI. CONCLUSION

For all the foregoing, Defendant respectfully requests that this proceeding be dismissed, with prejudice. Alternatively, the Plaintiff should amend the Complaint with more definite statements. Finally, the subpoena should be quashed or stayed until reasonable questions about the ethical matters have been satisfactorily resolved.

Respectfully submitted,



_____
Eric Menhart, Esq.
Lexero Law
10 G St NE, Suite 710
Washington, DC 20002
Phone: 855-4-LEXERO (855-453-9376) Ext. 101
Fax: 855-4-LEXERO (855-453-9376)
http://www.Lexero.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date of this filing a copy of the foregoing was served via ECF to Plaintiff's counsel:

Jon Alexander Hoppe
Maddox Hoppe Hoofnagle and Hafey LLC
1401 Mercantile Ln Ste 105
Largo, MD 20774

_____
Eric J. Menhart