# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC,** | * | |
| **Plaintiff,** | * | **CASE NO. 1:14-cv-01235-CCB** |
| **v.** | * | |
| **JOHN DOE subscriber assigned IP address 71.179.224.159,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT, OR, IN THE ALTERNATIVE, MOTION TO QUASH OR STAY THE SUBPOENA

## I.      INTRODUCTION

Plaintiff respectfully requests this Court deny Defendant's Motion.  Plaintiff's Complaint states a plausible claim for relief by alleging ownership of valid copyrights and copying of constituent elements of the works that are original.  Defendant's argument that he or she is not the alleged infringer has no bearing on a 12(b)(6) motion to dismiss.  Indeed, every court to address the issue has found that Plaintiff's complaints state plausible claims for relief.  Additionally, this Court should not quash the subpoena because Defendant is not subjected to an undue burden.  Finally, paying a service provider to record a computer transaction is not a basis under the Federal Rules of Evidence to exclude relevant evidence and testimony, nor dismiss Plaintiff's case.

## II.     FACTS

### A.     Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business

Colette Pelissier Field, with her husband Brigham Field, are the owners of Malibu Media and began their business from scratch.  *See* CM/ECF 4-2 at ¶3.  Ms. Field was a real estate agent and Mr. Field was a photographer.  *Id*. at ¶ 4.  When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together.  *Id*. at ¶ 5.  The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples.  *Id*. at ¶ 6.  The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand.  *Id*.  Their goal was to create erotica that is artistic and beautiful.  *Id*. at ¶ 7.  The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality.  *Id.* at ¶ 8.

Popular men's magazine GQ did a feature on X-Art.[1]  GQ did not hesitate to qualify X-Art's success as a company.  "Investing in next-level cinematography - with a mantra to eschew porn tropes - the mom-and-pop American start-up has grown into a global production team, accessed by viewers in the hundreds of millions."  *Id*.  Indeed, the GQ article aptly describes the talent of the Fields, the emotional intelligence behind the X-Art videos, and the fact that the crew works incredibly hard, filming throughout the world with the most talented directors, to present the best videos possible.

The Field's vision has come to fruition.  Currently, X-Art.com has tens of thousands of members, but the Fields are finding it hard to grow and maintain the memberships when so many people are finding their films for free.  *Id.* at ¶ 15.  They have worked hard and invested millions

---

[1] http://www.gq-magazine.co.uk/girls/articles/2013-03/13/brigham-colette-field-x-art-sex-scene (Exhibit B)

of dollars into their business in order to produce the best quality product.  *Id*. at ¶ 14.  For the first three years (when their site was not as popular) they did not have as many issues with piracy.  *Id*. at ¶ 18.  Now that their videos are highly desirable, more people steal their videos than pay for a subscription.  *Id*.  Malibu Media receives many complaints from its members asking why they should pay to subscribe when Malibu Media's movies are available for free through BitTorrent.  *Id*. at ¶ 19.  Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millenium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites.  *Id*. at ¶ 27.  Despite sending thousands of DMCA notices per week, the infringement continues.  *Id*. at ¶ 28.   And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free.  *Id*.  Plaintiff Malibu Media has filed suit in this judicial District and in judicial districts across the country seeking to deter and stop the infringement.

Defendant's criticism of Plaintiff's copyright protection efforts is unjustified.  Indeed, "[m]any internet blogs commenting on [these types of cases] ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages."  *Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013).  Last June, Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial.  *See Id*.  In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings.  Importantly, Judge Baylson found "Malibu Media Malibu has satisfied its burden of proof with substantial evidence and deserves a large award*." Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

B.  Courts throughout the Country Have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics

Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . .  Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works."  *Id.* (Emphasis in original).  Similarly, the Honorable Judge Hegarty of the District of Colorado has stated: "the Court has also witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement."  *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013).

Other courts have also opined that the criticism Plaintiff receives is unwarranted. "[Defendant] has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far."  *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 (N.D. Ill. May 17, 2013).  *See also Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012) (same); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).

C.  The Infringer

Defendant's Internet was used to infringe twenty-two (22) of Plaintiff's copyrighted works between August 15, 2013 and March 3, 2014.  *See* CM/ECF 1-2.  Defendant's Internet has been used to illegally downloaded Plaintiff's movies over the course of several months.  By

downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies. *See* Complaint, at ¶¶ 11 -20.

The length of time which Plaintiff's investigator recorded Defendant infringing Plaintiff's movies demonstrates that the infringer was not a mere guest or passerby. Indeed, it was someone with access to Defendant's Internet for a long period of time, consistently.

### D. Malibu and IPP Have a Written Fixed Fee Agreement

Malibu and IPP have a written fixed fee agreement pursuant to which Malibu pays IPP for providing the service of collecting data about infringements. Exhibit A, Field, at ¶ 8. IPP has not been paid anything for this case. Exhibit B, Fieser, at ¶ 10. Malibu's prior oral agreement with IPP to pay IPP a small portion of the amount received from a settlement or judgment from Malibu's litigation does not apply to this case. Field, at ¶ 7. Malibu has never paid *any* fact witness to testify in this case or any other case. *Id.*, at ¶ 9. Here, in preparation of its response to this motion, Plaintiff asked Michael Patzer, an individual who does not work for IPP, but who instead created the software IPP uses to record Defendant's infringement, to examine the evidence. *See* Exhibit C. Mr. Patzer independently reviewed the evidence in this case and confirmed that the evidence recorded Defendant's IP address infringing Plaintiff's copyrighted works at the exact Hit Dates and UTC times listed on Exhibit A to Plaintiff's Complaint. Patzer, at ¶ 13.

## III.   THIS COURT SHOULD NOT DISMISS THE COMPLAINT

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Foster v. Howard Cmty. Coll.*, CIV.A. RDB-13-1395, 2014 WL 758027 (D. Md. Feb. 24, 2014).

"[T]he complaint need only satisfy the 'simplified pleading standard' of Rule 8(a), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.' A plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Patrick Collins, Inc. v. Does 1-22*, 2011 WL 5439005, at *2 (D. Md. 2011) (internal citations omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).   "The factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff." *Hunt v. Sandhir, M.D.*, 295 F. App'x 584, 586 (4th Cir. 2008).

  A. <u>Plaintiff Pled a Plausible Claim for Infringement</u>

   Defendant's Motion to Dismiss improperly requests the Court adopt a higher standard for judging the sufficiency of Plaintiff's Complaint.  Defendant states, "while it is possible that an Internet Service Provider subscriber engaged in the infringing conduct, it is hardly probable, as the law requires."  The law does not require a complaint to be "probable".  "Although the plausibility requirement does not impose a 'probability requirement,' '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hunt v. Sandhir, M.D.*, 295 F. App'x 584, 586 (4th Cir. 2008).  Here, Plaintiff's well pled Complaint contains factual content which draws the reasonable inference that Defendant, the subscriber, is the infringer.  This is because by paying for the Internet, Defendant is the most likely person to use it, particularly when Plaintiff's movies are infringed 22 times over the course of nearly a year.  *See* Complaint Exhibit A.  Clearly, here, the infringer is not "a person on the street, a neighbor, or an illicit user of the Internet connection" as Defendant's motion suggests.  *See* CM/ECF 8 at *4.  The idea of random person using Defendant's Internet in the street to infringe Plaintiff's movies for several

months without Defendant noticing is practically impossible.  Even in the rare speculative event this could occur, it does not defeat that Plaintiff's allegations are plausible and at this stage of the litigation the Court must take them as true.

Malibu Media does not need to prove its claims in its Complaint, as Defendant would require.  "[Defendant] seems to argue that Malibu Media must, at this stage, put forth actual proof that [Defendant] has a BitTorrent Client on his computer or he copied the Work. [Defendant] demands too much too soon; proof is not required to properly plead a claim for copyright infringement."  *Malibu Media, LLC v. Harris*, 2013 WL 3780571 (S.D. Ind. 2013). "The arguments that John Doe raises concerning the link between the actual infringer and the IP address or MAC address do not undermine the plausibility of Malibu Media's claim or defeat that claim as a matter of law -- rather, John Doe raises factual issues about identity more properly dealt with during discovery."  *Malibu Media v. John Doe*, 2:14-cv-01280-SD (E. D. Pa. May 19, 2014).  "Plaintiff's allegation that its investigator connected to a computer associated with Defendant's internet account and was able to download bits of Plaintiff's copyrighted movies from it supports a plausible claim that Defendant infringed on Plaintiff's copyrighted works by copying and distributing portions of its movies."  *Malibu Media LLC v. Gilvin*, 3:13-CV-72 JV, 2014 WL 1260110 (N.D. Ind. Mar. 26, 2014) (emphasis added).

> [T]he difficulty that the Plaintiff will ultimately have in proving that the individual John Doe Defendant was the one who actually utilized the IP address to commit the accused copyright infringement is not relevant in the context of a motion to dismiss.  Instead, at this time, the Plaintiff merely has to state a plausible claim. Thus, while it is a reasonable possibility that the Defendant here did not commit any copyright infringement because another individual did so using his IP address, such as a different family member, visitor, neighbor, or passerby, it is an equally reasonable possibility that the Defendant committed the accused of act.

*Patrick Collins, Inc. v. John Doe 1*, 2013 WL 2177787 (E.D.N.Y. May 18, 2013) (denying similar motion to dismiss in BitTorrent copyright infringement case.)  *See also Malibu Media, LLC v. Lowry,* 2013 WL 6024371, at *7 (D. Colo. 2013) ("As to whether [Defendant] actually performed the alleged conduct, that is a matter for summary judgment or trial, as appropriate.").

> B. Every Court in the Country to Rule on this Issue Has Held Plaintiff's Complaint Survives a 12(b)(6) Motion to Dismiss

Plaintiff's Complaint alleges that "Defendant downloaded, copied and distributed a complete copy of Plaintiff's movies without authorization . . ." CM/ECF 1, ¶ 20.  Every court to address the issue has found that Plaintiff's complaints state a plausible claim for relief.  *See e.g. Malibu Media, LLC v. John Doe 1,* 2013 WL 30648 at *4 (E.D. Pa. 2013) ("Accepting all factual allegations in the Amended Complaints as true . . . the Court concludes Plaintiff has stated a claim upon which relief can be granted under the Copyright Act."); *Malibu Media, LLC v. Pelizzo*, 2012 WL 6680387 at *1 (S.D. Fla. 2012) ("Having carefully reviewed the allegations in the Complaint and the applicable authorities, the Court will deny the Motion because the Complaint adequately states a claim for copyright infringement."); *Malibu Media v. Roy*, Case No. 12-cv-617 (W.D. Mich.) (denying 12(b)(6) motion); *Malibu Media v. Pratt*, 1:12-cv-00621-RJJ, CM/ECF 31 (W.D. Mich. March 19, 2013) (same); *Malibu Media, LLC v. John Doe*, 2:13-cv-11446-AJT-DRG, CM/ECF 13 (E.D. Mich. Oct. 18, 2013) (same); *Malibu Media, LLC v. Lowry*, 2013 WL 6024371, at *5 (D. Colo. 2013); *Malibu Media, LLC v. John Doe 1*, 2013 WL 30648 at *4 (E.D. Pa. 2013) (same); *Malibu Media, LLC v. Pelizzo*, 2012 WL 6680387 at *1 (S.D. Fla. 2012) (same);  *Malibu Media, LLC v. Killoran*, 2:13-cv-11446-AJT-DRG, CM/ECF 13 (E.D. Mich. Oct. 18, 2013) (same); *Malibu Media, LLC v. John Doe*, 2:13-cv-00055-JVB-JEM, CM/ECF 22 (N.D. Ind. August, 16, 2013);  *Malibu Media LLC v. Doe*, 2013 WL 3945978 (E.D. Mich. 2013) (same); *Malibu Media LLC v. Gilvin*, 2014 WL 1260110 (N.D. Ind. Mar. 26,

2014) (same); *Malibu Media, LLC v. Sanchez*, 2014 WL 172301 (E.D. Mich. Jan. 15, 2014) (same); *Malibu Media, LLC v. Butler*, 13-cv-02707-WYD-MEH, CM/ECF 31 (D. Colo. April 24, 2014).

## IV.   THIS COURT SHOULD NOT QUASH THE SUBPOENA

Rule 45(c)(3) provides that a court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a person to comply beyond the geographical limits specified in Rule 45(c); requires disclosure of privileged or other protected matter; or, subjects a person to undue burden. *See* Fed. R. Civ. P. 45(c)(3)(A)(i-iv). The Rule also provides for circumstances in which a court may modify or quash a subpoena. These circumstances are when the subpoena requires disclosure of trade secret or other confidential research, development, or commercial information; or disclosure of certain expert opinions. *See* Fed. R. Civ. P. 45(c)(3)(B)(i-ii). "No other grounds are listed." *Malibu Media, LLC v. John Does 1-21*, 2012 WL 3590902 (D. Colo. 2012).

### a.  Defendant Fails to State a Legally Cognizable Reason to Quash the Subpoena Under Rule 45

Defendant argues that the subpoena should be quashed because (a) having to move to quash the subpoena and incur attorney's fees is an undue burden and (b) requesting the ISP comply is an undue burden. First, incurring attorney's fees and costs when Defendant *may* not be the infringer, is not an undue burden to warrant quashing Plaintiff's subpoena. Defendant does not have an undue burden because Defendant is not required to respond to anything. "[The] argument that the subpoena presents an undue burden is unavailing because the subpoena is directed toward the ISPs and not the Doe Defendants and accordingly does not require [the Doe Defendants] to produce any information or otherwise respond." *Third Degree Films, Inc. v. Does 1-108*, CIV.A. DKC 11-3007, 2012 WL 669055 (D. Md. Feb. 28, 2012). "[T]he undue

burden contemplated by Rule 45 is one placed on the direct recipient of the subpoena, the ISP in this case, not on third parties such as the Doe defendants." *Patrick Collins, Inc. v. Does 1-10*, JFM 8:12-CV-00094, 2012 WL 1144980 (D. Md. Apr. 4, 2012).  "[T]he undue burden referred to by Rule 45 is the burden on the subpoenaed party, in this case Comcast. Accordingly, the subpoenas will not be quashed as imposing an undue burden on Defendants." *Malibu Media, LLC v. John Does 1-49*, 12-CV-6676, 2013 WL 4501443 (N.D. Ill. Aug. 22, 2013).

Second, Defendant does not have standing to object that the subpoena is an undue burden on the ISP's behalf.  "The ISPs have not objected to the subpoenas, nor would any objection by them have much chance of success because, as Plaintiff correctly observes, federal law requires an ISP to provide information as to the identity of a subscriber upon proper legal process." *Malibu Media, LLC v. John Does 1-16*, 902 F. Supp. 2d 690, 698 (E.D. Pa. 2012).  Here, Defendant's ISP is the one tasked with responding to the subpoena and it has not objected. Defendant cannot do so on its behalf to avoid being sued for copyright infringement, particularly when no undue burden exists to the ISP.

## V.     MALIBU MEDIA DOES NOT PAY ITS WITNESS ON A CONTINGENCY

Defendant incorrectly argues that because of the possibility of witness bias based upon Malibu's payment for its investigator's services, this Court should dismiss Malibu's proper lawsuit.  As explained below, neither the facts nor the law support this contention.  The evidence that Malibu uses for purposes of proving infringement occurred is *recorded* in such way that it is *not* capable of being manipulated or altered.  Humans play no part in the creation or storage of the evidence.  Significantly, the evidence can be independently verified by anyone – including Defendant.  Indeed, in preparation of this response, Plaintiff independently verified that the

evidence is correct.   See Patzer Dec at ¶ 13.   Consequently, there is no possibility of biased testimony.

Further, it is lawful for Plaintiff to pay its investigator's company for its services.   IPP provides Plaintiff with a valuable and labor intensive service and should be compensated for its business.   While not titled as such, Defendant has essentially filed a Motion *in Limine* seeking to exclude relevant evidence and testimony before being even identified, served with the Complaint, or participated in any discovery.   As set forth below, paying a service provider to record a computer transaction is not a basis under the Federal Rules of Evidence to exclude relevant evidence and testimony, nor dismiss Plaintiff's case.

A.   <u>Malibu is Permitted to Pay For Data Collection Services</u>

Malibu has not paid nor offered to pay any individual for testimony.   The fee Malibu pays IPP is for data collection services.   Paying IPP for data collection services is neither unethical nor prohibited by law.   "[P]arties are free to pay individuals, including fact witnesses, for providing information and assisting with litigation, so long as the payment is not for their testimony."  *Armenian Assembly of Am., Inc. v. Cafesjian*, 924 F. Supp. 2d 183, 194 (D.D.C. 2013).   "[N]othing in the Code of Professional Responsibility prohibits a contingent fee contract with a consulting service so long as: 1) the service does not engage in the unauthorized practice of law; 2) the lawyer does not share legal fees with the service; and 3) the fee is not payable for the service's testimony."  *Schackow v. Med.-Legal Consulting Serv., Inc.*, 46 Md. App. 179, 196, 416 A.2d 1303, 1313 (1980).

At significant expense, IPP provides Malibu with labor and a data collection service. Malibu Media is permitted to pay IPP for its service.   "[T]his Court is unaware of any authority that interprets Rule 4-3.4(b) as barring counsel from compensating someone for their efforts in

collecting evidence." *Platypus Wear, Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao Ltda*, 2010 WL 625356 (S.D. Fla. 2010). "[T]he court concludes that [defendant] and its counsel paid [the witness] only for time spent in connection with the litigation process." *Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 679 (D. Kan. 2000). "Anyone has a right, when threatened with litigation, or desiring himself to sue, to employ assistance with a view of ascertaining facts as they exist, and to hunt up and procure the presence of witnesses who know of facts and will testify to them." *Hare v. McGue*, 178 Cal. 740, 742, 174 P. 663, 664 (1918).

    1.  <u>No Witness Has Ever Been Paid For Testimony Much Less on a Contingent Basis</u>

Defendant erroneously conflates Malibu's proper payment to IPP for its data collection services with the false allegation that Malibu paid Tobias Fieser for testimony. Mr. Fieser is a salaried non-equity owning employee of IPP. Fieser, at ¶¶ 4, 7. Malibu has never paid nor offered to pay Mr. Fieser anything. *Id.*, at ¶ 11. When, as here, "[i]t is clear that the [individual] himself, as a witness, is not eligible to receive compensation for his testimony . . . [the] case does not even involve the payment of a fee to a witness." *People v. McNeill*, 316 Ill. App. 3d 304, 306, 736 N.E.2d 703, 705 (Ill. App. Ct. 2000). In *McNeil,* the witness's employer's compensation was contingent on the outcome of the case. Like here, however, the witness was not paid for his testimony. The *McNeil* Court refused to exclude the witness and opined that the defendant could always attempt to impeach the witness's credibility on the basis that his employer had a contingent interest in the case.

Likewise, in *Schackow v. Med.-Legal Consulting Serv., Inc.*, 46 Md. App. 179, 196, 416 A.2d 1303, 1313 (1980) a company whose compensation was contingent on the outcome of the case arranged for expert witness testimony and helped prepare evidence for trial. The Maryland

Court of Special Appeals found that the witness testimony was proper even with the company's

contingency agreement in place because the contingency agreement was sufficiently separate to

not influence the testimony.  "It is clear beyond cavil that [Company] purported only to contact

medical experts and that no attempt or guarantee was made to 'deliver' expert testimony in

exchange for a contingent fee. All the experts were to be paid a flat fee by the client.

[Company's] role was limited to locating potential experts and then educating them about the

case for [Plaintiff's lawyer]. *That arrangement does not violate the public policy of Maryland*."

*Id.* at 197 (Emphasis added).

> 2.    The Northern District of Illinois and the Southern District of Indiana Recently
>        Denied Motions Nearly Identical to Defendant's Motion in Malibu Media Cases

Two courts have recently addressed the exact same issue raised by Defendant and found

that Malibu Media's agreement with IPP is proper.  "The Court is not convinced that the fact that

Malibu Media pays IPP for its services would have changed the decision to grant the subpoena.

Thus, Malibu Media's failure to apprise the Court of this fact does not warrant quashing the

subpoena."  *Malibu Media, LLC v. Doe*, 13 C 8484, 2014 WL 1228383 (N.D. Ill. Mar. 24, 2014).

> Doe's other three arguments relate to what Doe considers to be illegality and
> obfuscation surrounding Malibu Media's investigative methods. Doe maintains
> that because of these problems, the Court should not have considered Fieser's
> declaration. In response to Doe's motion, Malibu Media provides declarations that
> IPP is paid only for data collection services, that IPP has not been compensated
> for any work related to this specific case, and that Malibu Media has never paid
> nor offered to pay Fieser anything for his testimony. But even if Fieser or IPP
> were compensated on a contingency basis or otherwise for testimony, in violation
> of the rules of professional conduct applicable in this Court or 18 U.S.C. §
> 201(c)(2), which prohibits paying fact witnesses for their testimony, this does not
> make evidence obtained in violation of those rules inadmissible but rather only
> goes to the weight to be accorded to it.

*Id.*

Additionally, the Honorable Judge Dinsmore of the Southern District of Indiana denied a

Motion for an Order to Show Cause as to why Plaintiff Malibu Media, LLC should not be

sanctioned pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority.  In doing so, Judge

Dinsmore found that Plaintiff did not engage in improper conduct when it paid IPP for its data

collection services.  *See Malibu Media, LLC v. Kelley Tashiro*, 1:13--cv--00205--WTL--MJD

(S.D. In., Sept. 25, 2013) (Exhibit Q).

"Defendant has not offered any evidence that Plaintiff is paying IPP for anything but data

collection services used to gather information on Defendant to demonstrate infringement." *Id*.

"Based upon this response to an interrogatory, Defendant has made the inference that the

contingent fee arrangement is for the testimony IPP will give and not for any other purpose. The

Court is not convinced that such an inference is justified. As Plaintiff explained in its response

brief, *the fee paid to IPP is for the collection of data and not for IPP to testify as a witness*." *Id*.

at *2 (emphasis added).

      3.    <u>Even if Malibu Had Paid a Witness on a Contingency That Witness's Testimony<br>Should Not be Excluded</u>

"The *per se* exclusion of whole categories of evidence is disfavored by the Federal Rules

of Evidence.  It is a fundamental tenet of those rules that, with few exceptions, 'all relevant

evidence is admissible,' Fed. R. Evid. 402, and 'every person is competent to be a witness,' Fed.

R. Evid. 601." *U.S. v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) (refusing to prevent

the federal government's confidential informant from testifying even though the federal

government had offered the confidential informant *contingent* compensation for his testimony.)

"[T]he credibility of both paid informers and witnesses who are promised a reduced sentence for

their cooperation should be a matter for the jury to evaluate." *United States v. Holloman*, 238

F.3d 416 (4th Cir. 2000).  "[E]ven though compensation for testimony can be troubling, it does

not follow that the use of such an arrangement renders such testimony constitutionally

inadmissible *per se*." *United States v. Levenite*, 277 F.3d 454, 461 (4th Cir. 2002).  Notably

absent from Fed. R. Evid. 402 and 601 is that a witness be disinterested or uncompensated in order to be permitted to testify.

Consistent with the foregoing the "assumption that interested witnesses necessarily lie or that disqualification is the best way to deal with the threat of perjury" has been rejected. 27 Charles A. Wright & Victor J. Gold, *Federal Practice & Procedure* § 6005, at 69 (2007).  Even if a witness had motivation to lie "it does not follow that his testimony was untrue, nor does it follow that his testimony was constitutionally inadmissible. The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." *Hoffa v. United States*, 385 U.S. 293, 311, 87 S. Ct. 408, 418, 17 L. Ed. 2d 374 (1966).  "[T]he potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair." *Perry v. New Hampshire*, 132 S. Ct. 716, 728, 181 L. Ed. 2d 694 (2012).

### 4.  The Cases Which Defendant Relies on Are Distinguishable

#### b.  The Accrued Cases Are Not On Point

Each of the cases relied upon by Defendant is distinguishable from the case at hand. First, neither the Fourth Circuit, nor the District Court of Maryland decision in *Accrued Financial* stood for the proposition that evidence should be excluded in a contingency case. Indeed, the premise upon which Judge Motz based his order dismissing the case in *Accrued Financial* was that, "the assignments made by the tenants to AFS are void as a matter of public policy because they are champertous." *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, CIV.JFM-99-2573, 2000 WL 976800 (D. Md. June 19, 2000) *aff'd*, 298 F.3d 291 (4th Cir. 2002).  "The two appeals now before us are concurrent, raising the same issue—whether the contractual arrangements between AFS and the tenants are void as against the public policy of Maryland."

*Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 296 (4th Cir. 2002).  The question

at issue in the *Accrued* cases was whether the agreement between the parties was void, thereby

eliminating standing on behalf of the plaintiff.  Here, Malibu Media is the real party in interest

and has standing to sue because it owns the copyrights which have been infringed.

In *Accrued*, the Fourth Circuit noted that "[t]he laws against champerty, maintenance and

barratry are aimed at the prevention of multitudinous and useless lawsuits."  *Accrued Fin. Servs.,*

*Inc. v. Prime Retail, Inc.,* 298 F.3d 291, 306 (4th Cir. 2002).  Significantly, the Fourth Circuit

found the agreement with Accrued to be void against public policy because the claims were

brought with no regard to the real party in interest.

> Under these arrangements, even though the tenant might conclude, after
> reviewing the facts uncovered, that a lawsuit would imprudently damage the
> landlord-tenant relationship—or that pursuing aggressive allegations would do
> more harm than good—the tenant lost the right to control its destiny. Because we
> see these broad assignments as nothing more than arrangements through which to
> intermeddle and stir up litigation for the purpose of making a profit, we conclude
> that they violate Maryland's strong public policy against stirring up litigation and
> are therefore void and unenforceable in Maryland.

*Id.* at 298.

The factors at issue in *Accrued* are not present in this case.  Malibu Media files suits to

protect its business and it is in control of each lawsuit.   Its litigation is not frivolous.   And,

Malibu Media sought IPP's aid in identifying the infringing IP addresses, not the other way

around.  Malibu Media sought IPP's services because "the most significant competitive threat to

the business of X-Art.com is on-line piracy, and BitTorrent.  The website can only compete in a

fair marketplace, and cannot compete against free versions of its works."  Exhibit ___, Field

Declaration at ¶ 5.

Attached as an exhibit to its Motion for Leave to take early discovery, Plaintiff explains

its purpose for filing this lawsuit. "We spend over two million dollars a year producing content,

and millions more each year to run our business." CM/ECF 4-2 at ¶ 14. "Currently we have tens of thousands of members, but we are finding it hard to grow and maintain the memberships as so many people are findings our films for free." *Id*. at ¶ 15. "Each month, approximately 80,000 US residents use BitTorrent to steal our movies." *Id*. at ¶ 16. "We have worked hard and invested millions of dollars in our business in order to produce the best quality product." *Id*. at ¶ 17. "For the first 3 years (when our site was not as popular) we didn't have as many issues with piracy. Now, that our videos are highly desirable, more people steal our videos than pay for a subscription." *Id*. at ¶ 18. "We are even getting many complaints from our members (asking why they should pay when they are available for free on the torrents)." *Id*. at ¶19. "We must protect our copyrights in order to survive and to hope for any growth." *Id*. at ¶ 21. "Without these suits, I believe infringers would feel free to steal our movies without consequence." *Id*. at ¶ 32. "In conclusion, we want the courts to know that we are a small business and we need the law to be enforced to ensure our survival. It is getting more difficult for us every day and we hope that in the future there will be a better way to protect our copyrights." *Id*. at ¶ 33.

Malibu Media, the injured party, is consciously bringing this lawsuit because it has no other way to stop the infringement of its movies and protect its business. As the Field declaration states, "*We* do not pursue our claims against all Doe Defendants." *Id*. at ¶ 26. "*Malibu Media engaged* IPP International UG ("IPP") to detect infringement of its copyright works." Field Dec. at ¶ 6. This case does not involve champerty.

### 1. *Farmer v. Ramsey Is Not On Point*

Defendant's reliance on *Farmer v. Ramsay*, 159 F. Supp. 2d 873, 883 (D. Md. 2001) is misplaced. In *Farmer*, the Court excluded the expert's subjective and questionable witness report on the basis that the report appeared influenced by the direct contingency fee arrangement.

The Court noted that the data in the expert's report actually conflicted with the expert's conclusion. *Id*. at \*881. And, also found that "[e]ven if the reports were admitted, however, they would add little, if any, weight to Farmer's case." *Id*. at 883-84. This was because, "the Fourth Circuit has repeatedly held that 'raw statistics devoid of any context which relates those statistics to the alleged discriminatory practice are of minimal probative value.'" *Id*. at 884.

Here, there is no contingency fee agreement present in this action, Mr. Fieser has not been paid anything at all, and his report is not subjective. Indeed, Defendant is welcome to examine the PCAPs containing the evidence of infringement from his IP address. Even if Mr. Fieser's report were to be excluded, the evidence supporting the report is still probative of the infringement that occurred through Defendant's IP address. There is simply no basis to exclude that evidence, particularly when Mr. Patzer has independently verified that the evidence is correct. Patzer Dec at ¶ 15.

7.   <u>Sanctioning Plaintiff By Dismissing Its Cases Is Improper And Unwarranted</u>

Sanctioning a party by dismissing a case is only appropriate in the most severe scenarios. "Because the [court's] inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the *greatest restraint and caution*, and then only to the extent necessary . . . Since orders dismissing actions are *the most severe*, such orders must be entered *with the greatest caution*." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (emphasis added). The Court held that six factors *must* be considered prior to dismissing a case under the court's inherent power to sanction:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by

punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

*Id.* at 462-63.

In *Shaffer* the EPA brought an action under CERCLA and "the district court found that the government's attorneys deliberately and in bad faith breached their duty of candor owed to the court during the course of proceedings." *Id.* at 452. Specifically, "the EPA's on-scene coordinator for the cleanup, had misrepresented his academic achievements and credentials in this and in other cases and . . . the government's attorneys wrongfully obstructed the defendants' efforts to root out the discrepancies and failed to reveal them once they learned of them." *Id.* Despite the seriousness of the factual findings made by the district court, the Fourth Circuit reversed the dismissal of the case "[m]indful of the strong policy that cases be decided on the merits, and that dismissal without deciding the merits is *the most extreme sanction.*" *Id.* at 462 (emphasis added). The Fourth Circuit also "observe[d] that through an outright dismissal, the defendants receive the benefit of a total release from their obligations under the . . . laws. This would provide the defendants relief far beyond the harm caused by . . . [any] improper conduct and would frustrate the resolution on the merits . . . ." *Id.* at 463.

Here, no witness has been paid on a contingency basis and therefore no wrong has occurred. Further, the previous "oral contingency" arrangement has since been replaced. The purportedly "tainted" evidence is verifiable by anyone and, indeed, the evidence has been independently verified by Michael Patzer thereby eliminating the issue as it pertains to Tobias Fieser and IPP. Accordingly, neither Plaintiff nor its counsel is culpable. Further, neither Defendant nor the Court has suffered any prejudice.

Even if the Court finds that some wrongdoing has occurred, "the orderly administration of justice and the integrity of the process have not been permanently frustrated[.]" *Shaffer* at

463.  In cases involving more egregious conduct than that argued by Defendant here, courts have repeatedly denied sanctioning a party by dismissal or default judgment, saving the harshest of sanctions for only the worst conduct.  *See e.g. United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (despite violations of duty of candor and Fed. R. Civ. P. 26 involving obstruction of efforts to discover factual information, failure to withdraw objections to interrogatories, failure to modify a position wrongfully taken at a deposition, failure to advise the court or opposing counsel of subsequently discovered information, and improperly continuing litigation without disclosing existence of ongoing related criminal investigations, the Fourth Circuit found that dismissal as sanction was too severe); *Glynn v. EDO Corp.*, 2010 WL 3294347 (D. Md. Aug. 20, 2010) (dismissal improper where party wrongfully obtained internal documents and asserted privilege in bad faith, noting "even where a party steals property or information, dismissal or default judgment is only warranted in extreme circumstances.").

As the foregoing cases make clear, dismissal as a sanction is only appropriate in the most heinous situations.  The conduct alleged by Defendant in this case does not compare to the blatantly offensive conduct described above which was clearly ripe for dismissal.  Accordingly, this Court should deny Defendant's overreaching request for relief.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny the subject Motions.

Dated:  June 16, 2014

Respectfully submitted,

MALIBU MEDIA, LLC.
PLAINTIFF

By:   /s/*Jon A. Hoppe*
Jon A. Hoppe, Esquire #6479

Counsel
Maddox, Hoppe, Hoofnagle &
     Hafey, L.L.C.
1401 Mercantile Lane #105
Largo, Maryland 20774
(301) 341-2580

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  /s/*Jon A. Hoppe*